CLARK et al. v. NORTH COTTONWOOD IRRIGATION
& WATER CO. OF FARMINGTON.

No. 5110. Decided May 9, 1932. (11 P. [2d] 300.)

426

*Richards & Richards* and *Richards & Mitchell,* all of Salt Lake City, for appellant.

*H. D. Moyle* and *Lynn S. Richards,* both of Salt Lake City, for respondents.

## ELIAS HANSEN, J.

In this suit plaintiffs seek to quiet their claimed right to the use of the water which during low-water season rises in the natural channel of North Cottonwood creek below where it crosses the state highway in Farmington City, Davis county, Utah. The defendant denies that plaintiffs have a right to the use of such water and seeks to have quieted its claimed right to the use thereof. Upon issues joined by plaintiffs' complaint and defendant's answer and counterclaim a trial was had before the court sitting without a jury. The trial resulted in findings of fact, conclusions of law, and a decree being made and entered in favor of the plaintiffs. The right to the use of all the water in controversy was awarded to the plaintiffs. They were also given judgment for their costs. Defendant appeals. The decree quieting title to the use of the water in plaintiffs is attacked primarily upon the ground that various findings of fact are not supported by, but are contrary to the evidence.

North Cottonwood creek is a natural stream of water which rises in the Wasatch Mountains to the east of Farmington City in Davis county, Utah. It flows in a southwesterly direction and empties into Great Salt Lake. The creek crosses the state highway which connects Salt Lake City and Ogden in the northern part of the city of Farmington. The water in dispute has been used for many years to irrigate the lots within Farmington City and the farm lands in the vicinity of the city.

At the time of the trial, and for many years prior thereto, water was diverted from North Cottonwood creek at four places above and to the east of the state highway. At three of such places the water was diverted from the creek into irrigation ditches. At the other place water was diverted from the creek to an electric power plant. After the water was used to generate power most of it was diverted back into the creek. Some of the water diverted to the power plant was conducted through a pipe line to the Farmington City reservoir and used to supply the city with culinary water. For a number of years water has also been diverted from North Cottonwood creek into various irrigation ditches below and to the west of the state highway. Plaintiffs made no claim, except as stockholders of the defendant company, to the water which is diverted from the creek into the ditches which tap the creek above and to the east of the state highway. Plaintiffs also concede that the defendant has the right to regulate, control, and distribute to its stockholders the water which flows in the creek during the high-water season to the west of the state highway. Between June 15th and July 15th of each year all of the normal flow of the creek is diverted through the canals which tap the creek above the state highway. When the creek is thus rendered dry at the state highway, the so-called highwater season ends and the so-called low-water season begins. After the low-water season begins, there are occasional floods caused by rain which temporarily increase the water in the creek so that it cannot all be diverted into the canals which tap the creek above the state highway. Plaintiffs make no claim to such flood water. During the low-water season an appreciable amount of water from springs, seepage, and waste water finds its way into the creek below the state highway. It is the water from such sources during the low-water season which forms the subject-matter of this controversy. Plaintiffs claim the exclusive right to the use of this water. Defendant claims the right to control and regulate such water and to distribute the same to its

stockholders. Plaintiffs' claim to the use of the water in controversy is founded upon the alleged appropriation thereof by their predecessor in title and upon the alleged uninterrupted use thereof for more than forty years by plaintiffs and their predecessors in title. Defendant's claim to the right to control and regulate the water and distribute the same to its stockholders is bottomed upon an alleged conveyance thereof to it, and upon its alleged uninterrupted control and regulation thereof since 1891 when defendant corporation was organized.

Before the incorporation of the defendant company, the water of North Cottonwood creek was regulated and distributed by an association of water users who diverted water from the creek for the irrigation of their lands and for culinary uses. Plaintiffs deraign title to the land upon which they claim the right to use the water in dispute from one Ezra T. Clark who was one of the earliest users of the water of North Cottonwood creek. He was one of the signers of the articles of incorporation of the defendant company. The articles so signed by Mr. Clark contain this provision:

"That said corporation shall and does hereby purchase, take and hold the following described property with the appurtenances, privileges and rights to wit: The water rights of the persons hereinafter named in and to the following named Creeks and Water ditches. The North Cottonwood Creek with its laterals as follows:—The Compton Ditch and its laterals; The Burk Lane Ditch, the North Cottonwood Creek water Ditch of Farmington and its laterals; the East Ditch, the Walker Lane Ditch and the Turner and Rogers' ditch, the Richards, Spackman and Van Fleet ditches, the West Ditch, in full payment of and for the number of shares subscribed by said persons whose names, residences and number of shares subscribed for are as follows."

Immediately after the defendant corporation was organized it assumed control of the ditches mentioned in its articles of incorporation and it continued to exercise such control up to the time this suit was begun. The articles of incorporation mentioned all of the ditches which have

been used by the parties herein to divert water from North Cottonwood creek above the state highway. There were ditches used by the parties herein to divert water from North Cottonwood creek below the state highway, some of which ditches were not mentioned in the articles of incorporation. The defendant corporation did not take control of the ditches which were not mentioned in the articles of incorporation, but such ditches were left under the control of those who used them to divert water to their lands. At the time of the organization of the defendant company, a certificate for eighteen shares of its capital stock was issued to Ezra T. Clark and some years later a certificate for an additional twenty shares was issued to him. At the time of the trial the plaintiffs were the owners of thirty-eight shares of stock formerly owned by Ezra T. Clark. The plaintiffs were also, at the time of the trial, the owners of about 105 acres of land formerly owned by Ezra T. Clark which land was irrigated by Mr. Clark and the plaintiffs herein with water diverted from North Cottonwood creek. There is a conflict in the evidence as to whether or not the defendant, after its incorporation, exercised any control during the low-water season over the distribution of the water which was diverted from North Cottonwood creek below where it crosses the state highway. Plaintiffs' testimony tends to show that the defendant corporation has not regulated or distributed the water in controversy, but that, on the contrary, plaintiffs and their predecessors have had the exclusive control and use thereof both before and since the organization of the defendant company. Defendant's testimony tends to show that the water masters of the defendant company have distributed such water to its stock-holders ever since its organization. The stockholders of the company have always recognized a distinction between the shares of stock which entitle the owner to irrigate land within the city and the shares of stock used for the irrigation of farm lands. During scarcity of water the former are given preference over the latter. In the early part of

the high-water season there seems to be an abundance of water for every one. Each stockholder is permitted to use the water until he has finished irrigating his land without regard to the amount of land irrigated or the number of shares of stock owned by him. As the water recedes a different method of distribution has prevailed. At the beginning of the low-water season, or soon thereafter, the water master of the defendant company has issued tickets to the stockholders who own shares of stock for the irrigation of lots within the city. The tickets so issued designate the time that the various stockholders may use the water. The water, however, is not used upon the city lots at night. During seasons of scarcity the city water users are required to irrigate as late as 10 o'clock p. m. and to begin to irrigate as early as 5 o'clock a. m., but when there is a more abundant supply of water it is not used on the city lots as late at night or as early in the morning. The stream of water which supplies the city during the day has been permitted to run through the city to the farm lands to the west thereof at night. Tickets have not been issued to the stockholders for the use of the water on the farm lands. The evidence is rather vague as to what control, if any, has been exercised by the defendant company over the water during the night when it has not been used within the city. It does appear, however, that at times this water has been used to irrigate farm lands before it reaches the North Cottonwood creek, and that at other times it has been permitted to run back into the creek and after flowing therein for some distance has been again diverted on to the farm lands. Aparently the decree awards to plaintiffs all of the water from every source which finds its way into North Cottonwood creek below the state highway during the low-water season. The decree provides:

"That the plaintiffs are and they are hereby decreed to be the sole and exclusive owners of the right to the use of all of the waters flowing in the natural channel of the North Cottonwood Creek below the crossing of said creek with the State Highway in Farming-

ton City, Davis County, State of Utah, during the entire low water season of each and every year, said low water season commencing with the diversion of all of the waters of the North Cottonwood Creek flowing in the natural channel of said creek, above the crossing of said creek with said State Highway; that is to say, when all of the waters flowing in the natural channel of North Cottonwood Creek from North Cottonwood Canyon are diverted into the ditches of the defendant at defendant's points of diversion as now established, above the crossing of said creek with said State Highway, and ending with the termination of the irrigation season in the fall of each year."

Neither the pleadings, the evidence, nor the findings of fact entitle plaintiffs to a decree quieting in them the right to the use of the water, which, during the nights of low-water season, flows back into North Cottonwood creek below the state highway. Plaintiffs' allege in their complaint that they are the owners of the water "rising in the bed of the North Cottonwood Creek during low water season below what is known as the state highway." They do not allege that they are the owners of any other water. The findings of fact do not refer to the water which, during the nights of the low-water season, is permitted to flow through the city to the farm lands. The evidence does not show that plaintiffs have acquired title to such water by adverse use or otherwise. Such use as plaintiffs have made of the night water has been a permissive and not an adverse use. So far as appears, plaintiffs have never asserted any right thereto. Obviously, the defendant has a right at all times to use the natural bed of North Cottonwood creek below the state highway for the conveyance of the water under its control to its stockholders.

The water which rises in the bed of North Cottonwood creek below the state highway is for the most part water which seeps from irrigation canals and irrigated fields above and in the vicinity of the creek bed. The evidence shows that the amount of water so rising in the creek bed becomes materially greater during the months of July and August than it is during the early part of the

irrigation season. There is also evidence tending to show that such water has increased from year to year. One witness testified that the amount of water rising in the creek bed has nearly doubled since he first became acquainted with the creek. It is quite generally held that one may not acquire a permanent right to have seepage water kept up, but when seepage water finds its way back into the natural stream from which it was originally taken such water may be appropriated and again diverted and used upon other land. All of the parties to this litigation proceeded, as well they may, upon the theory that the seepage water in controversy is subject to appropriation. Plaintiffs claim that they and their predecessors in interest have had the exclusive use of this water for the irrigation of their lands for more than forty years. They also claim that Ezra T. Clark, their predecessor in title, did not convey his right to the use of such water to the defendant corporation when he signed its articles of incorporation. The defendant claims that when Ezra T. Clark signed the articles of incorporation containing the provisions heretofore quoted he thereby conveyed to the defendant all of his right in and to all of the water of North Cottonwood creek. Defendant also contends that the evidence is such as to demand a finding that the defendant has controlled the water in controversy ever since its organization. It is apparent that the provisions of the articles of incorporation relied upon by defendant as one of the sources of its right to the use of the water which rises in the bed of the creek below the state highway was not intended to convey and did not convey to the corporation all of the rights of the signers thereof in and to the entire irrigation system as it existed when the articles were executed. There were a number of irrigation ditches which were not mentioned in the articles of incorporation, but which were then in use to divert water from the creek. Nor is the language of the provisions relied upon by the defendant company free from ambiguity with respect to the water right which was intended to be conveyed to the cor-

poration. The water rights conveyed were limited to North Cottonwood creek with its named laterals. Such language does not preclude the introduction of oral testimony touching the question as to whether or not the signers of the articles intended to convey to the corporation all of their rights in and to all of the water of the creek. Moreover, the provisions of the articles of incorporation are not necessarily controlling in fixing the present right of the parties to this litigation. The articles were executed in 1891, so that the present rights of the parties depend rather upon the use to which the water has been put since the organization of the defendant company than upon the provisions contained in its articles of incorporation.

As to the use to which the water rising in the bed of the creek below the state highway has been put since the organization of the defendant company, the clear preponderance, if not the uncontradicted evidence, establishes these facts: The amount of water which has risen in the bed of the creek has been so small that, unless augmented with water from other sources, it would not flow to the outlying lands of the stockholders; the land upon which plaintiffs claim the right to use the water in dispute is near the creek; because of its nearness to the sources of the water supply plaintiffs' land may be irrigated with a small stream; for many years plaintiffs have irrigated, at the beginning of the low-water season, between eighty and eighty-five acres of land; later in the season the amount of land which plaintiffs have been able to irrigate has been reduced to thirty or forty acres; a part of plaintiffs' land is, and for many years has been, in a high state of cultivation; it has been devoted to raising sugar beets, onions, potatoes, corn, and alfalfa; the outlying land of the stockholders has, for the most part, been devoted to the raising of hay. Neither of the parties to this litigation make any claim that the water in dispute has not been put to a beneficial use. Prior to 1923, most, if not all, of the water which found its way into North Cottonwood creek above the Richards-Spackman-

Van Fleet ditch was diverted from the creek into that ditch and used to supply the stockholders whose lands were irrigated therefrom. From 1892 to 1923 the defendant company continuously maintained a dam across the North Cottonwood creek for the diversion of the water from the creek into the Richards-Spackman-Van Fleet ditch. A substantial quantity of water rises in the bed of the North Cottonwood creek between the state highway and the intake of the Richards-Spackman-Van Fleet ditch. One of the witnesses described it as a nice little irrigation stream. The North Cottonwood creek was, prior to 1923, tapped by the Richards-Spackman-Van Fleet ditch at a point about 1,100 feet below and to the south of where the creek crosses the state highway. During the summer of 1923 a flood, caused by heavy rainfalls in the mountains to the east of the city of Farmington, came down North Cottonwood creek. The flood brought with it large quantities of dirt and rock which were deposited in, and which completely filled up, the creek bed in the vicinity of the place where the Richards-Spackman-Van Fleet ditch had theretofore diverted the water from the creek. At the time of the trial of this cause the old creek bed had not been cleaned out. There is a conflict in the evidence as to who has had the use of the water which rises in the creek bed below the state highway and above the intake of the Richards-Spackman-Van Fleet ditch since the flood of 1923. Plaintiffs claim the right to the use of this water. Apparently they claim title by adverse use. They allege in their complaint:

"That during the year 1923, an unusual flood occurred, as a result of which large amounts of boulders, gravel and debris were carried down said creek, and deposited in the natural channel thereof and along the banks thereof, to such an extent and in such a manner as to render the diversion of waters from the natural channel of the said North Cottonwood Creek into the Richards-Spackman-Van Fleet ditch impossible; that since the irrigating season of 1922 none of the said waters arising in the natural channel of the North Cottonwood Creek below said State Highway during the low water season, and claimed herein as the property of the plaintiffs, was ever diverted through the said Richards-Spackman-Van Fleet ditch;

that since said irrigating season of 1922, all of the said spring water has been diverted and used by the plaintiffs and their predecessors in interest upon the above described lands, through the said Clark Lane ditch and the West ditch, and through points of intake located along the natural channel of said creek and below the intake of the West ditch."

One of the court's finding of fact is in substantially the language just quoted from the complaint. Such finding is one of those which appellant attacks upon the ground that it is not supported by, but is contrary to, the evidence. It will be noted at the outset that it is not alleged in that part of the complaint just quoted that plaintiffs' use of the water now being considered was adverse to the rights of the defendant. In the case of *Ephraim Willow Creek Irr. Co.* v. *Olson,* 70 Utah 95, 258 P. 216, this court had before it for determination the question of what facts must be established to acquire a right to water by adverse use. It is there said:

"The presumption is against the acquisition of title by adverse use. *Spring Creek Irr. Co.* v. *Zollinger,* 58 Utah 90, 187 [197] P. 737.

"The following from 1 Words and Phrases, First Series, at page 227, is a clear statement of the rule:

" 'To constitute "adverse possession" the possession must be actual, for otherwise there is no disseisin, and the real owner remains in possession, actually or constructively. It must be continuous, for upon its cessation or interruption the possession, in contemplation of law, is again in the holder of the legal title. It must be hostile to the real owner, and with the intention to claim the land adversely to him. This claim must be manifest from the nature or circumstances of the possession, so that the owner may be informed of it, and that he shall not be misled into acquiescence in what he might reasonably suppose to be a mere trespass when he would not have acquiesced in the assertion of a right adverse to his own title.'

"We know of no well-considered case holding contrary to the rule above stated."

Neither the allegations of the complaint, the findings of fact, nor the evidence support the conclusion that the plaintiffs have acquired any title by adverse use to the water which rises in the bed of North Cottonwood creek between

the state highway and the old intake of the Richards-Spackman-Van Fleet ditch. The evidence viewed in a light most favorable to the plaintiffs fails to show that they have had a continuous use of the water for the statutory period. During the month of August, 1926, all of the water flowing in the creek was for a short time used on the Smoot farm which is below plaintiffs' land. In 1924 and 1925 most of the water which rose below the state highway and above the old intake of the Richards-Spackman-Van Fleet ditch was, during the low-water season, conducted through an eight-inch pipe and used by the stockholders of the defendant company. This suit was begun in June, 1929. Such use as was made by the plaintiffs of the water now being considered during the irrigation season of 1923 to and including 1928 was not adverse to the rights of the defendant. They diverted the water below where defendant was wont to divert it from the creek. They did not assert any right to the use of the water until one or two years before this suit was commenced. There is no pleading, finding, or proof that the defendant abandoned its claim to the right to the use of the water which finds its way into North Cottonwood creek above the old intake of the Richards-Spackman-Van Fleet ditch. It may be a debatable question whether title to a water right may be acquired since the enactment of Laws of Utah 1903, chap. 100, by adverse use or after it has been abandoned by a prior appropriator without a filing in the office of the state engineer, as provided by law. *Deseret Live Stock Co.* v. *Hoopiania,* 66 Utah 25, 239 P. 479. This case does not require a decision of that question, and we do not express any opinion concerning the same. What we do decide is that the evidence in this case fails to show that the defendant has lost its right to regulate, control, and distribute to its stockholders the water which finds its way into the North Cottonwood creek above the old intake of the Richards-Spackman-Van Fleet ditch.

A different question is presented with respect to the water which rises in the North Cottonwood creek below the intake

of the old Richards-Spackman-Van Fleet ditch during the
low-water season. A fair preponderance of the evidence
shows that the defendant company has never exer-
cised any control over such water except when it has
been augmented with water from other sources. Ap-
parently the amount of water which rises in that part of
the creek is so small that it will not flow to the outlying
lands of the stockholders of the defendant company unless
it is augmented with other water. The evidence shows that
plaintiffs and their predecessors in interest have built and
maintained a small reservoir across the bed of the creek to
store this water for use upon their lands, and that they have
had the use of such water since the organization of the
defendant company at all times when it has not been aug-
mented by other water. Plaintiffs' right to the use of
such water is superior to the rights of the defendant.
From what has been said it follows that plaintiffs are en-
titled to have quieted in them the right to the use of the
water which rises in the bed of North Cottonwood creek
above their points of diversion and below the old intake
of the Richards-Spackman-Van Fleet ditch whenever such
water so rising in the bed of the creek is not augmented
by water, the right to the use of which is in the defendant
company. The defendant is entitled to have quieted in it
the right to the control, regulations, and distribution to its
stockholders of the other water here in controversy. The
defendant should not, however, be permitted to defeat plain-
tiffs' right to the use of the water which rises in the bed
of the creek below the old intake of the Richards-Spackman-
Van Fleet ditch unless such seepage water is materially
augmented with water to which defendant is entitled. In-
deed, unless a substantial quantity of other water is added
to such seepage water, the defendant company and its stock-
holders cannot derive any appreciable benefit therefrom.
Therefore, before the defendant company should be en-
titled to the use of the seepage water which rises in the
creek bed below the intake of the Richards-Spackman-Van

Fleet ditch, it should be required to add to such seepage water an amount equal to or greater than the amount of such seepage water. No costs should be allowed either party in this court or in the court below. It was suggested in the court below that the state of Utah should be made a party to this suit. The question is raised on this appeal. This is not a proceeding for a general adjudication of all of the water rights of North Cottonwood creek, and therefore the state of Utah is not a necessary party. *Morris* v. *Smith*, 76 Utah 162, 288 P. 1068.

The judgment awarding plaintiffs cost in the court below should be, and it accordingly is, reversed. This cause is remanded to the district court of Davis county, with directions to that court to amend its findings of fact, conclusions of law, and decree to conform to the views herein expressed. No costs are allowed either party.

CHERRY, C. J., and STRAUP, FOLLAND, and EPHRAIM HANSON, JJ., concur.