JOHN SMITH, APPELLANT, *v.* NORTH CANYON WATER COMPANY, RESPONDENT.

1. *Water Rights—Tenants in Common.*

In an action to quiet title, it appears that R. became the owner of 13½ acres of land, and was entitled to 13½ shares of water for irrigating the same. On 10 acres of this land R. paid taxes and received receipts therefor for the years 1877, 1878, and

1879. In 1884, R. made a quitclaim deed to his land to P., as security for a debt, and in 1887 R., by verbal agreement, sold the land to plaintiff, the conveyance being by quitclaim deed from P. No reference was made in either deed to water, except that the deeds were for such appurtenances as belonged to the land. The by laws adopted, and not repealed until 1887, provided that the water should belong to the lands, and not to individuals. Since 1887 plaintiff has been prevented from using water for more than $3\frac{1}{2}$ acres of land, except when he took it without the knowledge or consent of the defendant, which happened on one occasion in 1893, and on four occasions in 1894. Neither R. nor P. had any notice that their water right was terminated, or that their co-tenants held adversely to them. *Held,* that under the irrigation laws of 1876, R. and his associates became tenants in common of the water in question, and each land holder of such district was equally entitled to the use of the water brought into such district, according to his rights, by paying his proportionate share of the expense.

2. *Id.—Ouster of Tenants in common—Burden of Proof—Presumption—Adverse Holding—Statute of Limitations.*

The burden of proving an ouster of the tenant in common, and in proving adverse possession under the statute of limitations, devolves upon the co-tenant who asserts it. An adverse holding will not operate as an ouster, and set the statute of limitations running, until the tenant out of possession has some notice of such adverse holding.

3. *Id.—Abandonment.*

An abandonment of water, to be adverse, must be accompanied by all the elements required to make out an adverse possession.

4. *Id.—Conveyance.*

Where the deeds, as in this case, included appurtenances to the land, the right to water passed to plaintiff, the grantee, under section 2783, Comp. Laws Utah, 1888, and defendant, an absolute stranger to the conveyance, is not in a position to dispute the title obtained by the plaintiff under the deed. As to other persons the grantee may exercise all the rights of an absolute owner, whether the transaction be a mortgage or conditional sale.

5. *Interruption of Adverse User.*

The use of the water by plaintiff, without the knowledge or consent of the defendant, once in 1893, and four times in 1894, was such an interruption of defendant's use of the water as to prevent the creation of a title thereto by prescription, and it was also such a use and assertion of title to the water as to negative the presumption that he had abandoned or forfeited his right to it under the statute. The fact that defendant prevented plaintiff's use of the water in 1893 and 1894, after plaintiff's use of it was discovered, would not change the rule or inure to defendant's benefit.

(No. 894. Decided March 2, 1898.)

Appeal from the Second district court, Weber county. H. H. Rolapp, *Judge.*

Action by John Smith against North Canyon Water Company. Decree for defendant, and plaintiff appeals. *Reversed.*

This action was brought September 30, 1896, to quiet title to 13½ shares, or 13½-212, of a stream of water known as "North Canyon Creek," in Davis county, and $2,000 as damages for withholding said water from the plaintiff for a period of four years next prior to the commencement of this suit. The testimony given in the case is not reported, but it appears from the findings of fact that, in 1877, Bent Rolfson and others organized the defendant water company, and assumed control of the water of North Canyon creek, in Davis county. At this time Rolfson was the owner and the company acknowledged his right to have 10 acres of water right which was claimed and used on land owned by him, and during the years 1877, 1878, and 1879, at least, he paid the water taxes thereon. The land had been unsurveyed, and subsequently it was discovered that one Howard, who also owned a water right of 3½ acres, independent of Rolfson's interest, was occupying

land claimed by Rolfson. Thereupon Howard relin-
quished his right to said land and water right to Rolfson,
who continued to use the same. In 1884, Rolfson made a
quitclaim deed to his land now owned by plaintiff, which
included the land relinquished by Howard, to one Pitt,
as security for a debt due from Rolfson to Pitt. In 1887,
Rolfson sold the same land to the plaintiff by verbal sale,
and consented and agreed that Pitt should convey the
land by deed to the plaintiff. The deed from Rolfson to
Pitt and from Pitt to the plaintiffs were ordinary quit-
claim deeds, and it nowhere appeared therein that Rolf-
son's deed was intended as a mortgage. No reference was
made in either deed to the water, except that the deeds
were for such appurtenances as belonged to the land. At
the time of the sale Rolfson delivered to plaintiff a re-
ceipt for water taxes levied upon and paid by him after
the organization of the district. No water shares for stock
were issued by the water district to any owner. The water
district company agreed, in 1878, that each owner should
only draw water for the land he cultivated, and such land
was taxed at 15 cents per acre. In May, 1880, a resolution
was passed by the water company providing that water
should temporarily be withheld from land not planted in
season. The by-laws of the district adopted at its organi-
zation, and not repealed until 1887, provide that water
should belong to the lands, and not to the individuals, and
that no one could give away or sell water independent
from the land. If the owner did not need it, the water
master, on notice, would dispose of its use. Since the
plaintiff purchased and occupied the land in 1887, he has
been prevented by defendant from using more than 3½
shares of water right, except when he took and used water
without the knowledge or consent of the defendant. Not-
withstanding this, the plaintiff had each year insisted

upon and demanded his 10 acres of water right, and on one occasion, in 1893, he took water from defendant's ditch for irrigating said 10 acres, under his claim of right, and on three or four occasions, in 1894, he took and used such water for irrigating his 10 acres, under the advice of an attorney. When such use was discovered, it was interrupted. Neither Rolfson nor Pitt ever had any notice that their water right was terminated or extinguished, or that their co-tenants held the water adversely to them. The use of the 10 acres of water was worth $5 per acre per annum. The complaint alleges and the answer admits that the North Canyon creek is divided into 212 shares. Upon such facts the court found that since the organization of the water district, in 1877, all the owners of their acknowledged water rights therein, including the 10 acres for Rolfson, became tenants in common, and that the possession of one tenant was the possession of all co-tenants; that none of the co-tenants held, or claimed to hold, adversely to Rolfson; that as to Rolfson there was no ouster or relinquishment of his rights; that up to the time of the transaction between Rolfson and the plaintiff, in 1887, Rolfson was the owner of 10 acres of water right in the district, but, by reason of the failure to make proper conveyance, he abandoned that right; that plaintiff's right did not commence until he actually appropriated water, in 1887, and, not having shown an appropriation of more than $3\frac{1}{2}$ acres of water, he was not entitled to any further right therein, nor to any damages.

*Wilson & Willey*, for appellant.

*Stephens & Smith*, for respondent.

After stating the facts, MINER, J., delivered the opinion of the court.

It clearly appears that at the time of the organization of the water district of the defendant, in 1877, Rolfson, the plaintiff's predecessor in interest, had an unquestioned right to 10 acres of water, or 10-212 of the water, owned by the company in the North Canyon creek. This right was not diminished by the relinquishment of 3½ acres of water from Howard to him. Rolfson, after such organization, took possession and used the water on 10 acres of his 120-acre farm, at least for the years 1877, 1878, and 1879, and paid all the taxes levied upon his right. His right to this water was never in any way questioned or disputed by the defendant, or any co-tenant, up to the time he sold the land to which the right was appurtenant. By associating together under the irrigation laws of 1876, Rolfson and his associates became tenants in common of the waters of that stream, and each landholder of such district was equally entitled to the use of the water brought into such district, according to their rights, by paying their proportionate share of the expense. It nowhere appears that the taxes and expenses were not paid. 2 Comp. Laws Utah, § 2403; Freem. Co-Ten. § 88; Kin. Irr. § 301; *Bradley* v. *Harkness*, 26 Cal. 69.

The use of the water in question for several years subsequent to 1879 is not disclosed by the testimony or findings, and no negative findings appear, but that Rolfson actually used the water for at least three years. It appears by the resolutions and by-laws of the company that owners of water rights could only draw water for the land under cultivation, and that land not planted in season should not be allowed water. It does not appear from the findings that the water was not withheld on account of the provisions of these resolutions. It nowhere appears that the defendant or any co-tenant held adversely to Rolfson or his grantee. Whatever the truth may be, the findings

concede this fact. The burden of proving an ouster of the tenant in common, as in proving adverse possession under the statute of limitations, devolves upon the co-tenant who asserts it. Inasmuch as no finding was made upon this subject, the presumption is that the water was continued to be used with right by Rolfson. The possession of one tenant in common is the possession of all his co-tenants. There is no element of hostility in such possession, and an adverse holding will not operate as an ouster, and set the statute of limitations running, until the tenant out of possession has some notice of such adverse holding. Such possession cannot be considered adverse, unless there was an actual ouster or some equivalent act showing the intent or act of exclusion. Freem. Co-Ten. §§ 221, 222; *Thomas* v. *Glendinning*, 13 Utah 57; *Coleman* v. *Clements*, 23 Cal. 245; *Unger* v. *Mooney*, 63 Cal. 586.

Neither was there any abandonment of the water by the plaintiff or his predecessor in interest. To be adverse, the abandonment must be accompanied by all the elements required to make out an adverse possession. Kin. Irr. § 413. The court properly held that Rolfson remained the owner of the water until he sold the land upon which it was used to the plaintiff in 1887. But the court also held that Rolfson abandoned his right by making an improper conveyance of it to the plaintiff. We cannot concur in this holding. Section 2783, Comp. Laws Utah 1888, provides that " a continuous failure to use any right to water, for a period of seven years, at any time after the passage of this act, shall be held to be abandonment and forfeiture of such right, and whenever hereafter a conveyance of any parcel of land is executed, and a right to the use of water has been continuously exercised from the time of its first appropriation in irrigating such land, such right shall

pass to the grantee of such conveyance.   *   *   *   *
provided, that in any of the cases mentioned in this sec-
tion, any such right to the use of water, or any part
thereof, may be reserved by the grantor of such convey-
ance, by making such reservation in express terms in such
conveyance." The conveyance from Rolfson to Pitt was
upon its face an absolute conveyance of the land, with its
appurtenances, although, as between the parties, it was
intended as a mortgage. Rolfson after this, in 1887, sold
all his right and interest in the land and appurtenances
to the plaintiff. The title then being in Pitt, he agreed
that Pitt should execute a deed of the premises and ap-
purtenances to the plaintiff, and he at the same time de-
livered to the plaintiff the receipts for water taxes. As
between Rolfson, Pitt, and the plaintiff, this operated un-
der the statute as a conveyance of the title in the land,
together with all and singular the appurtenances there-
unto belonging and appertaining, to the plaintiff. This,
as between these parties, included the water right to the
land, and the plaintiff succeeded to all the rights that
Rolfson had therein. The defendant was an absolute
stranger to this conveyance, and is not in a position to dis-
pute the title obtained by the plaintiff under the deed. As
to other persons the grantee may exercise all the rights
of an absolute owner, whether the transaction be a mort-
gage or a conditional sale. 1 Jones, Mortg. § 339; Kin.
Irr. §§ 267, 268; 2 Comp. Laws Utah 1888, § 2783.

There is no express finding by the court that the defend-
ant had been in the quiet, peaceable, adverse, hostile as of
right, continuous, open, and uninterrupted possession of
the water in question for seven years previous to the com-
mencement of this action. Nor does the court base its de-
cision upon the ground of adverse possession, but rather
upon the fact that Rolfson, having failed to make a proper

conveyance of his right, thereby abandoned it, and that plaintiff's right did not commence until he actually appropriated the water. The burden of proving adverse, uninterrupted possession of the water for seven years is cast upon the party asserting, assuming, and claiming it. We have seen that the delivery of the deed to the plaintiff vested in him a right to the water. The possession of his co-tenant was his possession. Since 1887 the defendant prevented the plaintiff from using the water, although the plaintiff was constantly demanding his water right. On one occasion, in 1893, plaintiff took all the water under his claim of right, and used it on his 10 acres of land, and on three or four different occasions, in 1894, he took all the water for his 10 acres, under the advice of an attorney. This taking by the plaintiff was such an interruption of the defendant's use of the water as to prevent the creation of a title thereto by prescription, and it was also such a use and assertion of title to the water as to negative the presumption that he had abandoned or forfeited his right to it under the statute. The right of the defendant in the water would become fixed only after seven years' continuous, uninterrupted, hostile, notorious, adverse enjoyment; and, to have been adverse, it must have been asserted under the claim of title, with the knowledge and acquiescence of the person having the prior right, and must have been uninterrupted. To be adverse, it must have been accompanied by all the elements required to make out such adverse possession; the possession must have been actual occupation, open, notorious, hostile, and under a claim of title exclusive of any other right, continuous, and uninterrupted for a period of seven years. "The use must also have been open as of right, and also peaceable; for, if there is any act done by the owner that acts as an interruption, however slight, it pre-

vents the acquisition of the right by such use." Under the findings, the plaintiff had not continuously, for a period of seven years, failed to use his right to the water, but, on the contrary, had continuously demanded its use, and had actually used and appropriated it during the years 1893 and 1894. The use of the water by the defendant was interrupted by the plaintiff's lawful use and appropriation of the 10 acres of water right within the seven years next preceding the time of the commencement of this action. The fact that the defendant prevented plaintiff from using the water, after it discovered he was using it in 1893 and 1894, would not change the rule or inure to its benefit. The fact still remains that the defendant's use was not continuous and uninterrupted during the statutory period of seven years. The act on the part of the plaintiff in taking and using the 10 acres of water right upon his land, in 1893 and 1894, was an appropriation of the water as well as an assertion of title thereto. These acts of ownership and use not only preclude the presumption of any abandonment of the water on the part of the plaintiff, but also preclude the statutory bar of his rights to the use and ownership of the 10 acres of water. *American Co.* v. *Bradford*, 27 Cal. 361; *Cove* v. *Crafts*, 53 Cal. 135; *Authers* v. *Bryant* (Nev.), 38 Pac. 439; Freem. Co-Ten. § 222; Kin. Irr. §§ 256, 294; *Thomas* v. *Glendinning*, 13 Utah.57.

It appears from the findings that the use of the water by the defendant was worth five dollars per acre for each of the four years it had used it. Under the facts found, we are of the opinion that the judgment and decree of the district court should be reversed, and a decree entered in favor of the plaintiff, quieting title in the 10 acres of water right referred to in the complaint in the plaintiff, together with a decree for $200 as damages for the use of

the water by the defendant company for four years, as claimed in the complaint. The cause is remanded to the district court, with directions to set aside and vacate the decree entered therein, and to enter a decree against the defendant and in favor of the plaintiff for his 10 acres of water-right, which would be 10-212 of the water and shares of the North Canyon creek, and for $200 damages for the use of such water during the four years next previous to the commencement of this suit, together with costs of both courts.

ZANE, C. J., and BARTCH, J., concur.