265 P.2d 1016

**MITCHELL**

v.

**SPANISH FORK WEST FIELD IRRIGA-
TION CO. et al.**

No. 7955.

Supreme Court of Utah.

Jan. 26, 1954.

R. H. Andrus, Spanish Fork, Elias Hansen, Salt Lake City, E. R. Callister, Jr., H. R. Waldo, Robert B. Porter, Jr., Attys. Gen., for appellants.

P. N. Anderson, Nephi, Dilworth Woolley, Manti, for respondent.

CROCKETT, Justice.

Plaintiff, a farmer in Spanish Fork, Canyon, takes water from Thistle Creek, a tributary of the Spanish Fork River. He

brought this action in equity against defendant down-stream irrigation companies to quiet title to 7 and ½ cubic feet per second water of the creek for 24 hours a week during the irrigation season, and for a continuous stream through two ditches for stock watering purposes and maintenance of water level in a well during the off season.

The trial court's decree gave him only 2 and ½ c. f. s. for 12 hours each Monday during the irrigation season, plus rights to a continuous stream in one ditch for stock watering and to supply his well with underground water. Defendant companies appeal, claiming it error to give any water right to the plaintiff; the latter cross-appeals, charging that the judgment should have been for at least 5 c. f. s. for 24 hours once a week.

▉ Before proceeding to the merits, we digress to give attention to defendants' assertion that the pendency in the Third District Court of a general adjudication of water rights to the Utah Lake Drainage Area, which includes Thistle Creek, and another suit in the Fourth District Court to which the present litigants are also parties, prevent prosecution of the present action.

As to the suit in the Fourth District: The contention is not valid because it is not made to appear that the subject matter or the issues of that suit and the present controversy are the same.[1]

▉ As to the general adjudication suit in the Third District, reliance is placed upon Sec. 73–4–24, U.C.A.1953 which provides:

"If, during the pendency of a general adjudication suit, there shall be a dispute involving the water rights of less than all of the parties to such suit, any interested party *may* petition the district court in which the general adjudication suit is pending to hear and determine said dispute. * * * Thereafter the court *may* hear and determine the dispute and *may* enter an interlocutory decree to control the rights of the parties, * * * until the final decree in the general adjudication suit is entered. At that time the district court *may* after hearing make such modifications in the interlocutory decree as are necessary to fit it into the final decree without conflict." (Emphasis added.)

Despite the emphasized words, indicating that the statute is permissive, defendants argue that it is mandatory. They reason that because the practice of *allowing* separate determination of disputes between parties who were also involved in a general adjudication was followed before the above statute was passed, this Act must have been intended to do more than permit that which was already recognized as proper procedure; and further urge that failure to so interpret this statute would in effect emas-

1. Smith v. District Court, 69 Utah 493, 256 P. 539.

culate its purpose of preventing piece-meal litigation of water rights on a single river system. They cite Watson v. District Court[2] for the proposition that a final adjudication of the rights of some of the claimants to the waters of a source of supply may not be had where there is pending an action for a general adjudication of the rights to the use of such waters. However, a comparison of the facts in that case with the instant one will show that the actual holding is not so broad as to necessarily preclude the carrying on of this separate litigation.

Here, we have an independent suit initiated in a court in another district, involving both parties and properties therein, and whose rights can be litigated without in any way adversely affecting the rights of other parties to the general adjudication suit in the Third District. Rather compelling considerations would have to be present in order to require the abatement of this action and the deprivation of the Fourth District Court of its normal statutory jurisdiction[3] over the instant case, and thus prevent the parties from resorting thereto to settle their controversy, by compelling the Utah County litigants to go up to Salt Lake County to have their rights adjudicated when the parties, property, and undoubtedly all of the witnesses would be from Utah County.

The supposed emasculation of the general adjudication statute which defendants claim will occur if their interpretation is not adopted is not evident to us. In many instances it would complicate rather than simplify litigation to compel parties situated as are the litigants here to go into the general adjudication suit. As a matter of fact, in such general suits it is often necessary to conduct segmental litigation between parties to adjudicate their rights. It is true that the decree in the instant case would only be binding on the parties to this litigation and could not enlarge their rights against anyone else; it would necessarily be subject to the determination made in the general adjudication suit which would also be binding upon these litigants who are parties to it.[4] There may be circumstances under which the possible effect of the general adjudication would so drastically change the water rights being litigated in a separate suit, that it would seem futile or unwise to permit it to continue. This is something which the trial court can consider in exercising its discretion as to whether the action should be carried forward or abated. Under the permissive wording of the statute, and consistent with its purpose of simplifying and expediting litigation, it was within the discretion of the trial court to refuse to grant defendants' motion to abate the present action.

2. Watson v. District Court, 109 Utah 20, 163 P.2d 322.
3. See 73-1-10 and 11, 78-13-1, U.C.A. 1953.
4. See Wellsville East Field Irrigation Co v. Lindsay Land & Livestock Co., 104 Utah 448, 137 P.2d 634, 641.

Plaintiff's claim to the waters in question is based on adverse user from 1899 to 1939; since which date the initiation of water rights by this method has been precluded by statute.[5] The law of this State concerning acquisition of water by this method was stated in Wellsville East Field Irrigation Co. v. Lindsay Land & Livestock Co.[6] as follows:

"It is well established that the person asserting title by adverse user has the burden of proving it. The cases generally hold that there is a presumption against such acquisition of title. * * *"

We therein quoted with approval Smith v. North Canyon Water Co.:[7]

"The right of the defendant in the water would become fixed only after seven years' continuous, uninterrupted, hostile, notorious, adverse enjoyment; * * *."

and by such authority it is further established that in order for the use to have been adverse it must have been used under a claim of title and with the knowledge of the person against whom the right is asserted.

In about 1889 David A. Mitchell, plaintiff's father, homesteaded in the canyon, later acquiring some other lands including the purchase of the "Collett" farm in 1903. His testimony, corroborated by others, was that for the first 10 or 15 years (after 1889)

"we just took it [the water] whenever we wanted it." In 1899 all of the parties, or their predecessors, participated in an adjudication, culminating in what is known as the McCarty decree, fixing rights in the Spanish Fork River and its tributaries, including Thistle Creek. However, the Collett farm and its water were not included in this decree.

Said David A. Mitchell continued to use the water as he desired, according to his testimony about 2 second feet for 24 hours each week out of each of the 3 ditches, the Minnedoka, the Winward and the Collett, openly, notoriously and without interruption. The only interference with such use occurred sometime shortly after 1920 when he had a controversy with a Mr. Syler over the use of water from the Minnedoka and Winward ditches; the dispute was resolved by an agreement that Mitchell would use the water each Monday; he continued to so use water from the Collett ditch for 24 hours at a time whenever he needed it. Such conditions continued to prevail until 1932 when David A. Mitchell conveyed to his son, Ernest Mitchell, the plaintiff, who thereafter used the water the same as his father had done. It is true that there were on a very few occasions some disputes about the use of this water. At one time plaintiff's use was challenged by defendants' water commissioner, but threatened legal

5. 73-3-1, U.C.A.1953.
6. See note 4, supra.

7. 16 Utah 194, 52 P. 283, 286.

action against him never did materialize. He also was charged with part of the water against his McCarty Decree and Strawberry rights part of the time. But a survey of the entire record indicates that there is substantial competent evidence to support the trial court's finding that the plaintiff and his father used at least the waters awarded in such a manner as to meet the requirements of the law to acquire rights to it by adverse possession hereinabove set out.[8]

■Defendants raise three specific objections which they say controvert the possibility of the plaintiff's acquisition of ownership of the water by adversion. The first is that when it became necessary for the Canyon water users to form the Clinton Irrigation Company in 1917, that David A. Mitchell was one of the incorporators, signed the Articles of Incorporation, and must be deemed to have conveyed all of his rights in the water to the corporation, or at least would thereafter be estopped from contending that he did not do so. There is no evidence, and no claim made that he actually conveyed the particular waters in question; and the requisite elements of an estoppel are not made out.[9] He, and later his son, continued to use the water under the same circumstances after the formation of the company, which is inconsistent with defendants' contention and entirely in accord with plaintiff's ownership and use of such waters.

■ The second such point made by defendants is that, assuming that plaintiff and his father used more water than they had "rights to" (under the McCarty decree and in the Strawberry) if their use was adverse to anyone, it would only be adverse to their Canyon neighbors because defendants maintain that the Canyon people as a group at no time used more water than they owned by decree or purchase. The evidence fails to substantiate defendants' claim. The only direct proof supporting this contention relates to use in the 1940's, after the 1939 cutoff date for adverse possession. On the other hand, defendants' own witness, Lorin Jones, River Commissioner for the years 1923 to 1929 inclusive, stated that during that period the Canyon people used considerably more water than they had rights to.

■ The third and last point urged against plaintiff's claim of ownership by adverse possession is that David A. Mitchell on cross examination made an admission that he did not claim water by adverse use. It is true that in response to questioning he answered that water under the McCarty decree, Strawberry and the Collett water were all he claimed at the time he conveyed to his son Ernest Mitchell. Defendants say that plaintiff's claim is limited

8. Ibid.

9. See Murray Hill Min. & Mill. Co. v. Havenor, 24 Utah 73, 66 P. 762.

by and thus defeated by this testimony. In support of the trial court's refusal to accede to this argument the following observations are pertinent: Even though David A. Mitchell was plaintiff's predecessor in interest, under whose claims these water rights were acquired, he was not the owner of any interest in the water at the time this admission was made, nor was he a party to this litigation; he was only a witness in this case and his evidence was to be considered along with all other evidence. This particular part of his cross examination was opposed not only by the testimony of other witnesses, but was inconsistent with the general tenor of his entire testimony. Although testimony is generally no stronger than its cross examination, the admission referred to was not such as when weighed with all of the other evidence in the case would make it mandatory upon the trial court to find for the defendants in that regard.

■ The final point we consider on defendants' appeal is their charge that they should have been allowed damages for the difference between the 2 and ½ c. f. s. for 12 hours per week finally allowed plaintiff and the 7 and ½ c. f. s. for 24 hours a week that he used under the temporary order pending trial. The trial court based his denial of this claim upon the fact that a very high percentage of the excess water percolated through the soil and back into the stream and so was not lost to the defendants. On the basis of the record, it would be difficult, if not impossible, to award and evaluate damages for such difference.

What has heretofore been said also applies and sustains the court's decree as to the rights in water for stock watering purposes and the maintenance of water in plaintiff's well.

■ The cross appeal of the plaintiff challenges the judgment as in error for failing to award him at least 5 c. f. s. of water for 24 hours once a week. It is true that all of the plaintiff's evidence tended to show the use of more than the 2 and ½ c. f. s. for 12 hours each week as allowed. Yet it must be kept in mind that the quantity of water acquired is limited to that which is beneficially used upon the land.[10] The evidence was in direct conflict, yet there is adequate support therein for the conclusion that 2 and ½ c. f. s. for 12 hours once a week is all the water that was put to beneficial use upon the land upon which the use was established.

■ In further remonstrating against the small allowance of water to him, plaintiff assigns error for refusing permission to re-open the trial to take additional evidence. Before final judgment, the court had issued an order limiting the plaintiff to the 2 and ½ second feet of water. In an affidavit filed in support of his motion to re-open,

10. 73–1–3, U.C.A.1953: "Beneficial use shall be the basis, the measure and the limit of all rights to the use of water in this state."

plaintiff averred and offered to prove that portions of the pasture were "burning up" under the use of the water so limited and that in previous years this had not occurred. Counter affidavits indicating overgrazing and improper irrigation were presented. Inasmuch as this issue had been fully covered and testimony adduced by both sides with respect thereto in the trial, the denial of the motion does not appear to have been an abuse of discretion.

Judgment affirmed; costs to respondent (plaintiff).

McDONOUGH, HENRIOD and WADE, JJ., concur.

WOLFE, C. J., not participating.