364 P.2d 4

John YARDLEY, Plaintiff and Appellant,

v.

Max SWAPP, Executor of the Estate of Melvin Swapp, deceased, Duncan Findlay, et al., Defendants and Respondents.

No. 9379.

Supreme Court of Utah.

Aug. 9, 1961.

McKay & Burton, Macoy A. McMurray, Salt Lake City, for appellant.

Pickett & Pickett, St. George, Olsen & Chamberlain, Gustin, Richards & Mattsson, Richfield, for respondents.

CROCKETT, Justice.

Plaintiff John Yardley brought this action to obtain an adjudication of water rights of himself and the three named defendants in two small streams, Minnie or Little Creek, and Castle Creek. They are part of the eastward drainage of the Markagunt Plateau, and are tributaries to the Sevier River in Garfield County, Utah. He also sought damages for defendants' alleged invasion of his rights to use such waters; and injunctive relief to protect against interference in the future. The defendants denied his claims and also counterclaimed seeking adjudications of their own rights to use the waters of those streams.

The plaintiff testified; and called the defendants as adverse witnesses. At the conclusion of the plaintiff's evidence the defendants made motions to dismiss the plaintiff's complaint on the ground that he had "failed to establish a prima facie case." The court so ruled and granted the motions; and the defendants voluntarily agreed to dismiss their counterclaims. Plaintiff appeals.

Notwithstanding the dispute over whether the plaintiff had any such water rights in the court below, on appeal the defendants do not urge that he has no rights whatever to use the water in said streams. The effect of granting their motions to dismiss was to rule that even though plaintiff owned some such rights, the evidence he produced was not sufficient to entitle him to a declaration of what his rights are. The issue with which we are concerned is whether the trial court erred in refusing to make such an adjudication.

The rights to the use of these streams have twice before been before the court incidental to general adjudications on the Sevier River. It does not appear that there was any real controversy over how these particular tributaries are to be allocated. The decrees recited only that these parties (or predecessors) had rights to the use of said streams.

In 1906 the district court entered what is known as the "Morse Decree" the material portion of which is:

"XL

"Castle or Minnie Creek

"Garfield County

"[To] Martin Cutler, S. M. Anderson, William Greenhalgh, Josian Hoyte, E. Engelstead, James Little, jointly, all of the waters thereof."

In 1936, in connection with another such general adjudication, the "Cox Decree" was entered which similarly recognized the rights of the parties (or predecessors) in these waters in this language:

"[To] Blanche Showalter, M. C. Swapp, James A. Little and John Yardley: All of the waters of Castle and Minnie or Little Creeks, and out of spring areas tributary to said creeks during the entire year."

That decree likewise did not specify the quantities of water or what the priorities were, but said that the water "shall be measured to the owners and users thereof as of their respective dates of priority."

It seems a fair assumption that in former times these parties (or predecessors) used these waters as suited their needs without serious interference with each other; at least with sufficient amicability that there was no legal contest. The present difficulties appear to stem from the fact that the plaintiff is downstream from the defendants, so that if the water is in scarce supply, or the upstream users expand their usage, it leaves him short, or without.

It is plaintiff's contention that for several years past the defendants have deprived him of his proper share of the water; and that is the reason he requests a definite determination of the rights of the parties to use the waters of these streams. The position essayed by the defendants is that since time immemorial, particularly since before the Water Filing Act of 1903 [1] each property owner has diverted the waters available from such streams for use on his own property, and that the return flow, seepage and natural drainage in these water courses has resulted in sufficient downstream accumulation for use of the next lower property owner, so that each in turn used what water he desired. Defendants, therefore, denied the necessity of a judgment allocating particular amounts of water among the parties except in accordance with the practice just described. The dismissal of the actions, however, does not positively reflect even that point of view, but leaves the parties in the perplexity of not knowing what their rights are upon the basis of the indefinite "Cox Decree."

It is incontestable that by introducing that decree the plaintiff made a prima facie showing that he owns *some* rights to the use of the water in the streams, along with the defendants. The evidence which was adduced also showed that the parties are in sharp dispute as to the use of such waters, particularly as to the acreage irrigated; the claim of recent expansion by the defendants; and whether any time rotation system was respected by the parties. It is hardly open to question that the trial court believed from the evidence that the plaintiff had at least some substantial rights in these waters. In his discussion with counsel in considering the motions to dismiss, he observed: "The way it's [the water of these

---

1. See Sec. 73–3–1, U.C.A.1953, and notes following for the effect of the Water Filing Act of 1903.

**149**

streams] being used \* \* \* everybody is sharing pretty much what there is equally now, right today."

█ Like any other written instrument, where there is ambiguity and uncertainty, the meaning of the "Cox Decree" may be explained by extraneous evidence of the background and circumstances out of which it arose.[2] It is appreciated that the claims of these parties are based on what are sometimes called "diligence rights" which were acquired by putting the water to a beneficial use prior to 1903, the date of our act requiring filing on water rights.[3] Generally such rights must be established by proof of such beneficial use prior to that date. But in the instant case, in the absence of any definite proof as to what the usage was prior to 1903, and in view of the fact that the decrees referred to adjudicated the existence of *some* such rights, evidence of the actual practices of the parties in using water of these streams under the provisions of such decrees, over the years up to and including the time when the alleged violations occurred, may be considered by the court in determining what the rights of the parties are.

█ Upon the state of the record, particularly in view of the fact that no evidence was presented on behalf of the defendants, we do not presume to judge nor to suggest what these rights are. It may well be that upon plenary presentation of the evidence and due consideration thereof, the trial court will determine that the upper user in each instance has full priority to use as much of the entire stream as he desires, and that the lower user has a right only to what is left. However, unless a more definite determination is made, it is plain to be seen that upon the basis of the "Cox Decree" the parties are left in a quandary as to what their rights are, or to fend for themselves by each taking whatever he can get without concern for the others. Such a situation is obviously fraught with the possibility of mischief and strife. It is the purpose of the law to settle, or at least to minimize controversy, by providing the best possible basis for persons whose interests impinge on each other to get along harmoniously.[4]

In view of the fact that these parties have interests in a common water source and there is dispute in the evidence as to the extent of those interests, there should have been and there should be a declaration of the water rights of the parties in these streams with such definiteness as may be achieved.

2. Cf. Charlton v. Hackett, 11 Utah2d 389, 360 P.2d 176 and authorities therein cited.

3. See footnote 1.
4. See Secs. 78-3-1 et seq. as to right to have rights defined.

Only if it appears that the plaintiff has rights which have been infringed, need there be a determination of the issues of damages and injunctive relief.

The cause is remanded for further proceedings in conformity with this opinion. Costs to appellant.

WADE, C. J., McDONOUGH, J., and JEPPSON, District Judge, concur.

HENRIOD, J., does not participate.

CALLISTER, Justice (dissenting).

I agree with the majority opinion that it would be desirable to have a declaration of the water rights of these litigants. However, the plaintiff, having commenced this action, had the burden of introducing evidence which would establish a water right in himself, its priority, nature, quantity and extent thereof; also, the rights and priorities of the defendants and that the defendants have deprived him of water to which he is entitled. This the plaintiff failed to do.

As I read the majority opinion, it would have the effect of placing upon the defendants the burden of proving the existence or nonexistence of plaintiff's rights. The lower court had no alternative but to dismiss the action,[1] but should have done so without prejudice.

---

1. See Lost Creek Irrigation Co. v. Rex, 26 Utah 485, 73 P. 660.