780 P.2d 1241 (1989)
In the Matter of the General Determination of the Rights to the Use of All the Water Both Surface and Underground Within the Drainage Area of the Bear River and Its Tributaries in Utah.
COLLEGE IRRIGATION COMPANY, Spring Creek Cache Irrigation Company, and Clear Creek Water Users, Appellants,
v.
LOGAN RIVER & BLACKSMITH FORK IRRIGATION COMPANY, a corporation, Appellee.
No. 870002.
Supreme Court of Utah.
September 29, 1989.
*1242 E.J. Skeen, Salt Lake City, for appellants.
L. Brent Hoggan, Logan, for appellee.
R. Paul Van Dam, Michael M. Quealy, Salt Lake City, for state water engineer.
HALL, Chief Justice:
Appellants College Irrigation Company ("College") Spring Creek Cache Irrigation Company ("Spring Creek") and Clear Creek Water Users ("Clear Creek") appeal the judgment of the district court which reaffirmed the entitlement of the Logan River and Blacksmith Fork Irrigation Company ("Blacksmith Fork") to 34 cfs of water out of the Logan River pursuant to the "Kimball Decree"[1] and denied appellants' *1243 claims of a prescriptive right to portions thereof. Appellants seek reversal and a new trial, their contentions being that (1) the trial court's findings of fact are not supported by the evidence; (2) the trial court erred in not making findings of fact on all issues; and (3) the trial court erred in refusing to reopen the case for the purpose of taking additional evidence.
Appellants initiated this proceeding seeking to modify the state engineer's proposed determination of water rights so as to permit College and Spring Creek to continue their longtime practice of constructing and maintaining watertight dams in Blacksmith Fork River during periods of reduced flow in order to divert water into their separate water systems. Clear Creek sought to modify the proposed determination in order to permit its continued use of Clear Creek water without regard to the earlier priority right of Blacksmith Fork.
The case was tried to the court, sitting without a jury, in April 1980. At the close of trial, the court afforded the parties the opportunity to submit memoranda in support of their respective positions. Appellants filed a memorandum dated July 18, 1980, which was followed by the state engineer's memorandum, dated September 5, 1980. For reasons undisclosed by the record, it was not until some six years later that Blacksmith Fork filed its responsive memorandum, dated July 15, 1986. This prompted appellants to file a reply memorandum dated August 22, 1986, with the request that the court take judicial notice of exhibits extracted from the records of a United States Geological Survey ("USGS") water gauging station which tabulated the monthly and yearly mean discharge of the Logan River in cfs for the years 1896 to 1950.
By letter of October 1, 1986, appellants sought to further supplement the evidence before the court with the daily water flow records of the Logan River. This correspondence was received by the court on October 2, 1986, the same day the court filed its memorandum decision resolving all issues in favor of Blacksmith Fork.
Appellants filed objections to the proposed findings of fact and conclusions of law and also moved to reopen the trial on the bases of (1) missing trial exhibits; (2) uncertainty whether the court had taken judicial notice of the stream flow records; (3) the six-year delay of Blacksmith Fork in filing its memorandum; and (4) the need to present additional stream flow evidence.
By order dated December 1, 1986, the court received in evidence the exhibits appellants had attached to their reply memorandum and declared that in reaching its decision, it had duly considered said evidence. On the same day, the court signed and entered its formal findings of fact, and conclusions of law, and decree.
The threshold issue, both at trial and on appeal, is whether appellants carried the burden of proof to show that prior to 1939 they deprived Blacksmith Fork of any of its water rights by adverse use.
Prior to 1939, a water right could be acquired by proof of an adverse use against an existing right or rights.[2] However, the presumption is against the acquisition of such a right, and the burden of proof is therefore upon the party asserting adverse use.[3]
The elements of proof necessary to acquire a prescriptive right to water are seven years of continuous, uninterrupted, hostile, notorious, and adverse enjoyment under a claim of title with knowledge and acquiesence of the owner of the prior right and at a time when the owner of the right *1244 needed the water adversely claimed.[4]
In the instant case, the trial court found that appellants failed to prove that they deprived Blacksmith Fork of any of its allocation of water during any consecutive seven-year period prior to 1939. That finding is entitled to a presumption of correctness, and on appeal, the evidence is surveyed in the light most favorable to the finding.[5] If there is a reasonable basis in the evidence to support the finding,[6] the finding will not be overturned unless it is clearly erroneous.[7]
It is incumbent upon appellants to marshal all of the evidence in support of the findings of the trial court and to then demonstrate that even when viewed in the light most favorable to the factual determination of the trial court, the evidence is insufficient to support its findings.[8] Failure of appellants to do so in the instant case is, in and of itself, dispositive of their challenges to the trial court's findings of fact.[9] Nevertheless, in view of the narrow issue presented, we have undertaken a review of the record, from which we conclude that the trial court's findings have an adequate basis in the evidence.
The record is devoid of any evidence that the actions of appellants caused Blacksmith Fork at any time to have less water at its point of diversion than was needed to satisfy its allocation of water under the "Kimball Decree." Blacksmith Fork's water right is from the Logan River, and all of the rights of appellants are upstream and junior thereto. The Blacksmith Fork River is a tributary to the Logan River and enters the Logan River above the point of diversion of the right of Blacksmith Fork. The right of a water user extends to all sources that feed the stream.[10] However, so long as a water user has sufficient water at its point of diversion to satisfy its right, it has no complaint about upstream uses of water, whether by prior or junior appropriators.[11] Thus, the fact that an upstream user with a junior right uses water tributary to a downstream prior appropriator is not only unobjectionable, but is perfectly proper and wholly consistent with the basic principles of the doctrine of appropriation of water, provided the downstream user is not deprived of its needs. In sum, the mere use of water proves nothing; there can be no adverse use or forfeiture if there is sufficient water for all users;[12] and for the use to be adverse, the party against whom the claim is asserted must be in need of the water.[13]
It is clear from the record that the dams built by Clear Creek and Spring Creek were not built to appropriate water, but to divert their own entitlement to water into their irrigation systems. There is also evidence that the Spring Creek irrigation system was constructed to allow the water diverted for its needs to reenter the Blacksmith Fork River below the dam and that the water diverted did in fact return to the main channel of the river. In addition, the evidence is sufficient to support a finding that the dams constructed by Clear Creek and Spring Creek were not watertight and that water did pour through the dams and was available to downstream users.
The record is also clear that the trial court accepted and duly considered the USGS survey of the flow of the Logan *1245 River in making its decision. However, the survey does not purport to show that Blacksmith Fork was deprived of its needs of allocated water at its point of diversion. This is to be seen in that the USGS measurements of water flow were made at a point some three miles upstream of Blacksmith Fork's point of diversion, and in the absence of any evidence of any tributary or return flow of water into the river below the measuring point and the point of diversion, it is entirely speculative that Blacksmith Fork had insufficient water to meet its needs at its downstream point of diversion. It is also apparent on the face of the USGS survey that there was no consecutive seven-year period recorded prior to 1939 when the volume of water at the measuring point was less than the 248 cfs required to satisfy all prior appropriations pursuant to the "Kimball Decree."
While it is necessary that the trial court find the facts specially and state separately its conclusions of law,[14] and although the failure to make findings of fact on all material issues is reversible error,[15] Clear Creek's contentions of such error in this case are to no avail.
As discussed above, the failure of any of the appellants to bear the burden of proof of adverse use obviated the necessity of the trial court to make separate findings. Suffice it to say that the court made a sufficient finding of the material fact which is dispositive of the issue presented, specifically, that none of the appellants made a showing that they deprived Blacksmith Fork of its allocation of water during a time of need.
Appellants' remaining contention regarding the denial of their motion to reopen the case for the purpose of taking further evidence is also without merit.
In an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.[16] The bases for a motion made for the purpose of so amending a judgment are delineated in the rule,[17] those pertinent to this proceeding being accident, surprise, newly discovered evidence, or insufficiency of the evidence to justify the decision. A motion to alter or amend a judgment shall be served no later than 10 days after entry of judgment,[18] and it lies within the sound discretion of the court to reopen the case.[19]
In the instant case, the motion to reopen was duly considered by the trial court, after which it ruled that all issues sought to be raised had been exposed to the court in prior hearings or memoranda and had been previously ruled upon. The record before us supports that ruling.
We conclude that the issues were fairly tried and that the denial of the motion to reopen did not constitute a manifest abuse of discretion.
Affirmed.
HOWE, Associate C.J., and STEWART and DURHAM, JJ., concur.
ZIMMERMAN, Justice (dissenting):
I dissent from the affirmance of the trial court's decision. Appellee delayed some six years before filing its responsive brief in this case. That brief raised an issue that required introduction of the daily flow data for the stream in question. Appellants gathered that information and submitted it to the court. The trial court never took judicial notice of that information, although it did take notice of the monthly and annual flow figures. It appears from the briefs and argument that the trial court's decision likely would have been different had it taken the new information into account.
*1246 When appellants moved the court to reopen the case to receive the daily flow data, inter alia, that motion was denied. There is nothing to suggest that reopening would have caused substantial delay, and the proffered evidence appears necessary to the proper administration of justice. I would hold that the denial of that motion was an abuse of discretion under the facts of this case. See 89 C.J.S. Trial § 591, at 379 (1955).
NOTES
[1] The "Kimball Decree" is a 1922 district court decree entered in the case of Utah Power & Light Co. v. Richmond Irr. Co., No. 1772 (1st Jud.Dist. Feb. 21, 1922). It adjudicates and establishes most of the rights to the waters of the Logan River and its tributaries.
[2] The 1939 amendment to Utah Code Ann. § 73-3-1 (1981) abolished the doctrine of adverse use of water.
[3] In re the General Determination of All Water Rights Within the Drainage Area of the Green River, 12 Utah 2d 102, 106, 363 P.2d 199, 201 (1961).
[4] See Wellsville East Field Irr. Co. v. Lindsay Land and Livestock Co., 104 Utah 448, 463, 137 P.2d 634, 641 (1943).
[5] Harline v. Campbell, 728 P.2d 980, 982 (Utah 1986).
[6] Id.
[7] Utah R.Civ.P. 52(a); Lemon v. Coates, 735 P.2d 58, 60 (Utah 1987).
[8] Harline, 728 P.2d at 982; Scharf v. BMG Corp., 700 P.2d 1068, 1070 (Utah 1985).
[9] Scharf, 700 P.2d at 1070.
[10] Richlands Irr. Co. v. Westview Irr. Co., 96 Utah 403, 418, 80 P.2d 458, 465 (1938).
[11] Adams v. Portage Irr., Res. & Power Co., 95 Utah 1, 13, 72 P.2d 648, 653 (1937); Conant v. Deep Creek & Curlew Valley Irr. Co., 23 Utah 627, 631, 66 P. 188, 190 (1901).
[12] Spring Creek Irr. Co. v. Zollinger, 58 Utah 90, 97, 197 P. 737, 740 (1921).
[13] Id.
[14] Utah R.Civ.P. 52.
[15] Romrell v. Zions First Nat'l Bank, 611 P.2d 392, 394-95 (Utah 1980).
[16] Utah R.Civ.P. 59(a).
[17] Id.
[18] Utah R.Civ.P. 59(b).
[19] See Christenson v. Jewkes, 761 P.2d 1375, 1377 (Utah 1988).