2009 UT 16

OTTER CREEK RESERVOIR COMPANY, a Utah corporation; Richfield Irrigation Canal Company, a Utah corporation; Sevier Valley Canal Company, a Utah corporation; Monroe South Bend Company, a Utah corporation; Monroe Irrigation Company, a Utah corporation; Elsinore Canal Company, a Utah corporation; Annabella Irrigation Company, a Utah corporation; Brooklyn Canal Company, a Utah corporation; Joseph Irrigation Company, a Utah corporation; Vermillion Irrigation Company, a Utah corporation; and Piute Reservoir and Irrigation Company, a Utah corporation; Plaintiffs and Appellant,

v.

NEW ESCALANTE IRRIGATION COMPANY, a Utah corporation, Defendant and Appellee.

No. 20060942.

Supreme Court of Utah.

March 3, 2009.

Kay L. McIff, Richard K. Chamberlain, Richfield, for appellant.

Steven E. Clyde, Edwin C. Barnes, James P. Alder, Christopher B. Snow, Salt Lake City, for appellee.

PARRISH, Justice:

## INTRODUCTION

¶1 Prior to 1939, water rights in Utah could be obtained through seven years of "continuous, uninterrupted, hostile, notorious, adverse [use]." *In re Use of Water Within Drainage Area of Green River*, 12 Utah 2d 102, 363 P.2d 199, 201 (1961). In 1939, the Utah Legislature amended Utah water law to bar the acquisition of water rights by adverse use. 1939 Utah Laws 148

("No right to the use of water either appropriated or unappropriated can be acquired by adverse use or adverse possession."). In this appeal, we are asked to determine whether a water right can be acquired by adverse use if the seven years of adverse use began before 1939 but were not completed until after 1939. We hold that the seven years of adverse use must have been completed prior to the effective date of the 1939 amendment.

## BACKGROUND

¶ 2 This case involves two competing claims to snow melt in Iron Springs Draw, which is located near the divide between the Sevier River drainage and the Escalante River drainage. Left to its natural course, the water would eventually flow into the East Fork of the Sevier River, which forms part of the water supply of plaintiffs (collectively, "Otter Creek"). New Escalante Irrigation Company ("New Escalante") claims that since the late 1800s, it has maintained a ditch that intercepts the water and carries it across the divide and into the Escalante River drainage. For the purposes of this appeal, New Escalante claims that it has been adversely using the water against Otter Creek since December 1, 1936, the day after the issuance of the Cox Decree, which adjudicated all water rights in the Sevier River drainage.

¶ 3 In 2001, Otter Creek filed an action in the Sixth District Court, seeking (1) a declaratory judgment that New Escalante had no right to use the water, (2) an injunction against further diversion or use of the water, (3) an order requiring New Escalante to fill the Iron Spring ditch, and (4) damages. New Escalante counterclaimed, arguing that it had a diligence right[1] to the water or, in the alternative, that it had a superior right based on adverse use. Both sides filed motions for summary judgment.

¶ 4 In a memorandum decision, the district court granted Otter Creek's summary judgment motion regarding the diligence claim, holding that New Escalante had forfeited its rights because it had not participated in the Cox Decree.[2] However, the court acknowledged that New Escalante had begun adversely using the water on December 1, 1936–the day after the Cox Decree was issued. The court then made the legal ruling that is at issue on appeal: "[A] right initiated before 1939 could still ripen into [an] adverse possession claim after 1939." The court accordingly denied Otter Creek's motion for summary judgment on the adverse use claim, concluding that because New Escalante's adverse use began in 1936, its use could ripen into a water right if it could prove the necessary elements of adverse use. Following the district court's memorandum decision, Otter Creek filed a petition for interlocutory appeal on the narrow issue of whether a water right can be acquired by adverse use if the seven-year period required to maintain an adverse use claim was commenced, but not completed, when the legislature statutorily abolished adverse possession of water rights in 1939. We granted the petition.

## STANDARD OF REVIEW

¶ 5 This court reviews the "district court's 'interpretation and application of a statute' for correctness, 'affording no deference to the district court's legal conclusion.'" *Wasatch Crest Ins. Co. v. LWP Claims Adm'rs Corp.*, 2007 UT 32, ¶ 6, 158 P.3d 548 (quoting *Gutierrez v. Medley*, 972 P.2d 913, 914–15 (Utah 1998)).

## ANALYSIS

### I. APPROPRIATION AND ADVERSE USE

¶ 6 We begin our analysis with a brief historical review of appropriation and ad-

---

1. A diligence right is a water right acquired by putting water to beneficial use prior to 1903, the year in which Utah water law first required prospective appropriators to file applications with the state engineer. *See Yardley v. Swapp*, 12 Utah 2d 146, 364 P.2d 4, 6 (1961).

2. Despite the dissent's suggestion to the contrary, whether the Cox Decree affected New Escalante's water rights is not before us on interlocutory appeal. Rather, New Escalante has indicated in its briefing before this court only that it "disagrees with this ruling and has preserved it for [later] appeal if necessary."

verse use of water in Utah. Under Utah's territorial laws, a statutory provision recognized the vesting of a water right "[w]henever any person or persons shall have had the open, peaceable, uninterrupted and continuous use of water for a period of seven years." Compiled Laws of Utah § 2780, s.6 (1888). Case law applying section 2780 construed it as establishing a right to obtain title by adverse use. *See, e.g., Ephraim Willow Creek Irr. Co. v. Olson,* 70 Utah 95, 258 P. 216, 218 (1927). Following statehood, the Utah Legislature repealed the statute containing the adverse use provision with an appropriation statute. 1897 Utah Laws 219 ("The rights to the use of any of the unappropriated waters of the State may be acquired by appropriation."). An adverse use statute never again appears in Utah statutory law. *Wellsville E. Field Irr. Co. v. Lindsay Land & Livestock Co.,* 104 Utah 448, 137 P.2d 634, 655 (1943) (Hoyt, D.J., concurring in part and dissenting in part) ("[Section 2780] was repealed in 1897 and has not since been reenacted either in substance or effect.").

¶ 7 In 1903, the legislature enacted a new act to govern the appropriation and use of water. *See* 1903 Utah Laws 88–107. The new act amended the appropriation statute to state that water rights could be acquired only by following the proper appropriation procedure, which included filing an application to appropriate with the state engineer. *Id.* at 97 ("Rights to the use of any of the unappropriated water in the State may be acquired by appropriation, in the manner hereinafter provided, and not otherwise."); *id.* at 98 (requiring a prospective appropriators to first file an application with the state engineer). The wording of the appropriation statute was again changed in 1935, but the meaning of the statute remained the same: rights to unappropriated public water could be acquired only by first filing an application with the state engineer. 1935 Utah Laws 196.

¶ 8 Although the statutory scheme clearly prohibited the acquisition of water rights to unappropriated water by adverse use, the question remained whether previously appropriated water rights could be obtained

through adverse use. This court answered the question in 1937, holding that "as between private claimants, water rights in Utah can be acquired by adverse use[ ] and possession." *Hammond v. Johnson,* 94 Utah 20, 66 P.2d 894, 900–01 (1937). The decision was clear but short-lived. The 1939 legislature closed the door on *Hammond* by amending the appropriation statute to include the following sentence: "No right to the use of water either appropriated or unappropriated can be acquired by adverse use or adverse possession." 1939 Utah Laws 148. This exact language still appears in the current appropriation statute. *See* Utah Code Ann. § 73–3–1 (1989). Thus, since 1939, water rights in Utah cannot be obtained by adverse use. *See Coll. Irr. Co. v. Logan River & Blacksmith Fork Irr. Co.,* 780 P.2d 1241, 1243 n. 2 (Utah 1989) ("The 1939 amendment . . . abolished the doctrine of adverse use of water.").

## II. LANGUAGE FROM PRIOR CASES

¶ 9 This court has never squarely addressed the issue of whether an adverse user can successfully obtain an adverse use right if the adverse use period began before 1939 but was not completed until after 1939. Our prior cases contain dicta that seem to support both sides of the argument. In *Wellsville East Field Irrigation Co. v. Lindsay Land & Livestock Co.,* we stated that "title could *between 1903 and 1939* be acquired by adverse possession," thereby implying that adverse use title could not vest after 1939. 104 Utah 448, 137 P.2d 634, 640 (1943) (emphasis added). But in *Mitchell v. Spanish Fork West Field Irrigation Co.,* we stated that "[p]laintiff's claim to the waters in question is based on [being an] adverse user from 1899 to 1939; since which date the *initiation* of water rights by this method has been precluded by statute." 1 Utah 2d 313, 265 P.2d 1016, 1019 (1954) (emphasis added). This language suggests that the 1939 amendment prohibited only claims for which the adverse use had commenced after 1939, but allowed adverse use claims where the adverse use began prior to that date. A few years later, however, our language in *In re Drainage Area of Bear River* suggested that the seven years of adverse use must have

been completed by 1939. 12 Utah 2d 1, 361 P.2d 407 (1961). In that case, we stated that "appellants could acquire water rights by adverse use only by continuous adverse use for seven years after the 1919 decree and before the 1939 statute." *Id.* at 410.

¶ 10 The apparent confusion caused by our dicta is shown by the fact that two commentaries on Utah law relied on our cases to reach opposite conclusions on the issue. According to *Summary of Utah Real Property Law,* the effect of the 1939 amendment was that "any possible claims of a right arising by adverse use must have matured before the 1939 amendment to the Code." 2 Brigham Young Univ. Legal Studies, *Summary of Utah Real Property Law* 618 (1978). In a separate article, *A Primer of Utah Water Law,* Robert W. Swenson reached the opposite conclusion, stating that "[t]he supreme court ... indicated that adverse use which had commenced prior to 1939 could ripen into title after the effective date of the act." Robert W. Swenson, *A Primer of Utah Water Law: Part I,* 5 J. Energy L. & Pol'y 165, 190 (1984).

¶ 11 Our most recent dicta concerning the issue came in *Salt Lake City v. Silver Fork Pipeline Corp.,* 2000 UT 3, 5 P.3d 1206. In footnote 19 of *Silver Fork,* we stated:

> Before 1939, Utah law allowed a party to obtain title to use of water by adverse possession. *See Hammond v. Johnson,* 94 Utah 20, 28, 66 P.2d 894, 900–01 (1937). Following an amendment to Utah's Water Code in 1939, adverse use that began before 1939 could still ripen into title after the effective date of the Act. *See Mitchell v. Spanish Fork West Field Irr. Co.,* 1 Utah 2d 313, 317, 265 P.2d 1016, 1019 (1954); *Wellsville East Field Irr. Co. v. Lindsay Land & Livestock Co.,* 104 Utah 448, 460–66, 137 P.2d 634, 640 (1943). However, adverse use commenced after the effective date of the [A]ct could not ripen into title by adverse possession: "No right to the use of water either appropriated or unappropriated can be acquired by

adverse use or adverse possession." 1939 Utah Laws ch. 111, § 1.

*Id.* ¶ 46 n. 19.

¶ 12 Although the language of *Silver Fork* is ostensibly clear, it is only dicta. In that case, Silver Fork Pipeline Company argued that if its adverse use commenced prior to 1939, the adverse use right could vest after 1939. Salt Lake City did not argue whether Silver Fork's legal analysis was correct. Rather, Salt Lake City argued that even under Silver Fork's interpretation, no adverse use right arose because the adverse use by Silver Fork's predecessor did not begin until the 1940s. Because the actual interpretation of the 1939 amendment was never squarely before the court, the language of footnote 19 was an unexamined assumption that is not instructive in our decision in the present case.[3]

¶ 13 Because our prior language is both contradictory and nonbinding dicta, we reject our prior statements and construe the statute anew, beginning with its plain language.

### III. PLAIN LANGUAGE

██ ¶ 14 "Under our established rules of statutory construction, we look first to the plain meaning of the pertinent language in interpreting [a statute]; only if the language is ambiguous do we consider other sources for its meaning." *Fla. Asset Fin. Corp. v. Utah Labor Comm'n,* 2006 UT 58, ¶ 9, 147 P.3d 1189. In this case, the 1939 amendment to the appropriation statute is clear on its face; thus, we rely solely on the statutory language in reaching our decision.

██ ¶ 15 The 1939 amendment reads as follows: "No right to the use of water either appropriated or unappropriated can be *acquired* by adverse use or adverse possession." 1939 Utah Laws 148 (emphasis added). Adverse use rights are not "acquired" when the adverse use begins; rather, adverse use rights are acquired only after seven years of continuous use. *See Coll. Irr. Co. v. Logan River & Blacksmith Fork Irr. Co.,* 780 P.2d at 1243–44 ("The elements of proof necessary to *acquire* a prescriptive right to

---

**3.** The district court also recognized that footnote 19 is dicta but found it "helpful in trying to predict how the Supreme Court would rule on the issue."

water are seven years of continuous, uninterrupted, hostile, notorious, and adverse enjoyment under a claim of title .... " (emphasis added)); *Wellsville E. Field Irr. Co. v. Lindsay Land & Livestock Co.*, 104 Utah 448, 137 P.2d 634, 640 ("[T]itle could be *acquired* by seven years of open, peaceable, uninterrupted and continuous use." (emphasis added)); *Smith v. N. Canyon Water Co.*, 16 Utah 194, 52 P. 283, 286 (1898) ("The right ... in the water would become *fixed* only after seven years' continuous, uninterrupted, hostile, notorious, adverse enjoyment .... " (emphasis added)).

¶ 16 Because the statute states that no adverse use right can be acquired after 1939, and because an adverse use right is not acquired until after seven years of adverse use, it follows that the seven years of adverse use must have been completed before 1939. By using the word "acquired" rather than "initiated" or "begun," the legislature provided that no adverse use rights could vest after 1939, even if the adverse use had begun prior to that date. We therefore reverse the legal determination of the district court and hold that an adverse user must have completed seven years of adverse use before the effective date of the 1939 amendment in order to satisfy the requirements of a claim for adverse use. Any adverse use initiated but not completed by 1939 was cut off by the 1939 amendment and could not develop into an adverse use right.

## CONCLUSION

¶ 17 The plain language of the 1939 amendment reveals that the seven years of adverse use necessary to acquire an adverse use right must have been completed prior to the effective date of the amendment. We therefore reverse the legal determination of the district court and remand for further proceedings consistent with this determination.

¶ 18 Chief Justice DURHAM, Associate Chief Justice DURRANT, and Justice NEHRING concur with Justice PARRISH'S opinion.

WILKINS, Justice, dissenting:

¶ 19 I respectfully disagree with the conclusion reached by my colleagues. I would affirm the trial court's ruling.

¶ 20 On the record before us, New Escalante Irrigation Company has been using the water source in contest for more than a century. Beginning in 1890, or earlier, and continuing until 2001, New Escalante's use of the water was open, peaceable, uninterrupted, and continuous. Not until 2001, with the filing of the present action by Otter Creek Reservoir Company and the other plaintiffs, was that use contested.

¶ 21 When New Escalante's predecessor in interest commenced use of the water, the law of the Utah territory allowed such a use to mature into a right to the water so used, so long as the use was open, peaceable, uninterrupted, and continuous. Compiled Laws of Utah § 2780, s.6 (1888). Upon statehood, the legislature enacted a statutory restriction on the acquisition of new water rights by adverse possession. 1897 Utah Laws 219. However, neither that statute nor any since enacted purported to extinguish existing water rights. Moreover, the right then held by New Escalante was not a right taken, by adverse possession or otherwise, from another water user. Consequently, restrictions to be imposed under the statutory scheme on newly acquired water rights were ineffective against existing rights.

¶ 22 The direct consequences on this dispute of the general water adjudication case that resulted in the Cox Decree have not as yet been presented for our review. However, on the theory that the Cox Decree cut off the New Escalante right, the trial court, and my colleagues, construct an analytical strawman using the assumption that the use of the water at issue by New Escalante could only have begun after the Cox Decree, and that the time from the Cox Decree to the 1939 statutory prohibition on *adversely acquired* water rights is the critical focus of our analysis. It is here that I most differ with my colleagues.

¶ 23 On the facts before the trial court, New Escalante's use of the water at issue began prior to 1890, and was fully perfected.

The Cox Decree had no impact on the legitimacy of the New Escalante use. The presumption that legitimacy could only be achieved through an adverse use claim arising after the Cox Decree is mistaken. The New Escalante right was clearly established at the time, and continues to this day to enjoy enforceable legitimacy. I would therefore affirm the trial court's decision, but on the grounds that the century old right had been established and maintained by New Escalante according to law prior to both the Cox Decree and the 1939 statutory change.